**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        sbogdanovich@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: pfraietta@bursor.com

*Attorneys For Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVSION

| | |
|---|---|
| HUDSON GILL and CLAIR AWAD, individually and on behalf of all other persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CHIPOTLE MEXICAN GRILL, INC. <br><br> Defendant. | Case No.    8:24-cv-1672 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Hudson Gill and Clair Awad ("Plaintiffs") file this class action complaint on behalf of themselves and all others similarly situated (the "Class Members") against Defendant, Chipotle Mexican Grill, Inc. ("Defendant" or "Chipotle").  Plaintiffs bring this action based upon personal knowledge of the facts pertaining to themselves, and on information and belief as to all other matters, by and through the investigation of the undersigned counsel.

## **NATURE OF THE ACTION**

1.     This is a class action suit brought against Chipotle for lying to its online customers placing delivery orders that they are paying artificially high taxes, when in fact, they are paying Chipotle's eye-popping service fees.

2.     Whenever consumers go to Chipotle's website, chipotle.com, or use the Chipotle mobile smartphone application, select delivery, and pick out their food, they are taken to Chipotle's checkout page. On the checkout page, Chipotle discloses a subtotal, a $1.00 delivery fee, a tax, and a total.  Next to the "tax" is a "∨" drop-down symbol.  If consumers click on that drop-down symbol, it shows the components of the tax.  Tax = Tax + Service Fee.  That math doesn't add up.



| | | |
|---|---|---|
| **Subtotal** | | **$30.15** |
| Delivery Fee | | $1.00 |
| Tax ^ | | |
| Tax | | $3.43 |
| Service Fee | | $7.54 |
| **TOTAL** | | **$42.12** |

**Figure 1**                              **Figure 2**

3.      In other words, Chipotle is hiding its hefty service fees inside of a "Tax" burrito. This is textbook fraud. On Figure 1, Chipotle lies and says the "Tax" is "$10.97." On Figure 2, Chipotle admits the "Tax" is "$3.43." The "Service Fee," in contrast, represents a whopping 20% of the subtotal.

4.      Law abiding consumers pay taxes because they believe they have to. There is no point in complaining about taxes. Benjamin Franklin once said "in this world nothing can be said to be certain, except death and taxes." As such, many consumers will simply grumble and pay, without ever even clicking the drop-down button in Figure 1. By hiding its service fees under the cloak of taxes, Chipotle can unjustly enrich itself by falsely making people believe they are paying taxes for the public good. They are not.

5.      And consumers have little reason to ever even click the drop-down button. After all, on that same page Chipotle prominently discloses that it charges a modest $1.00 "Delivery Fee" on all delivery orders. This intentionally misleads consumers into believing that that is the only fee being charged, when, in fact, there is a "Service Fee" hiding within the "Tax" category. In just the example shown above, the "Service Fee" is more than seven times larger than the quoted "Delivery Fee."

6.      And even the $1.00 "Delivery Fee" is intentionally misleading—because it does not even represent the true added costs of delivery. *After* a consumer completes the transaction, Chipotle discloses on customer receipts that the hidden "Service Fee" it charged went to "power[ing] easy, integrated delivery." And in fine print on the order page, Chipotle states that "Menu pricing for delivery is higher." About 50% higher. In fact, many of Chipotle's consumers, who have grown accustomed to burritos and bowls for around $10 will be shocked to realize that the same price of those items when ordered for delivery are closer to $15.

7.     Chipotle's false and intentionally misleading advertising is particularly deceptive based on the purchasing context here—food delivery.   In all likelihood, consumers are hungry, their blood sugar is low, and their concentration levels are waning.  As a result, they are less likely to notice Chipotle's textbook bait-and switch tactics.

8.     For these reasons, Plaintiffs assert claims on behalf of themselves and similarly situated purchasers for: (1) violations of California's Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.;  (2) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 1750, et seq.; (3) New York's General Business Law §349, et seq.; (4) Quasi-Contract; (5) Fraud; and (6) Unjust Enrichment.

## THE PARTIES

9.     Plaintiff Hudson Gill is an adult citizen of the state of California and resides in Aliso Viejo, California.

10.     Plaintiff Clair Awad is an adult citizen of the state of New York and resides in North Bellmore, New York.

11.     Defendant Chipotle Mexican Grill, Inc.("Chipotle") is a Delaware corporation with its principal place of business in Newport Beach, California.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from at least one Defendant.

13.     The Court has general personal jurisdiction over Defendant because Defendant is a California limited liability company and has its principal place of business in California, meaning it is at home in the State of California.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    3

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## **FACTUAL ALLEGATIONS**

15.    Chipotle is a Mexican fast-food chain with over 700 locations in California, New York, and Massachusetts, collectively.  It operates a website, www.chipotle.com, and a smartphone application (available for download from the Apple app store and the Google Play store) which allow consumers to order food for delivery from many of these locations.

16.    When a prospective customer first visits Chipotle's website, are prompted to order.



**Figure 3**

17.     If such a consumer hits the "ORDER NOW" button on the main page, they are prompted to select pickup or delivery and input their address.



**Figure 4**

18.     After a consumer enters his or her address, he or she can select the food items to purchase for delivery.  After those items are selected, the bag symbol in the upper right-hand corner of the screen includes a number showing the number of food times selected.



**Figure 5**

1

19.    If a consumer clicks on that bag, a scrollable checkout window emerges.



**Figure 6**

20.     A consumer can click the "CHECKOUT" button without having to scroll down to the bottom of that Checkout screen.  If a consumer scrolls to the bottom of the screen, Chipotle shows displays an itemized subtotal which includes a "Tax" amount and drop-down "∨" symbol.



**Figure 7**

21.     Only if a consumer clicks on the drop-down symbol does the website reveal that most of the amount listed as a "Tax" is not actually "Tax" but a "Service Fee" charged by Chipotle. In the example below, Chipotle's "Service Fee" is a whopping 20% of the order subtotal.[1]

**Figure 8**

---

[1] The service fee amount appears to vary depending on which state a consumer orders food from.

22.     If a consumer clicks the "CHECKOUT" button in Figures 6 and 7, they are prompted taken to a final payment screen which again lists a "Tax" with a drop-down "V" symbol.



**Figure 9**

23.     A person can click the "SUBMIT ORDER" button on this screen without ever having seen that the amount listed as a "Tax" is not truly a tax, but a bundling of tax and Chipotle's hidden "Service Fee."

24.     The purchase flow process depicted above remains substantially the same regardless of whether a consumer purchases food for delivery via the Chipotle

website or the Chipotle smartphone app, and regardless of whether the consumer signs up for Chipotle's reward's program and logs in.  Chipotle's website and app always shows them a "Tax" figure on the Checkout and Payment screen which hides within it a 20% "Service Fee."

25.     Worse yet, this "Service Fee" is entirely duplicative of the $1.00 "Delivery Fee" Chipotle discloses to consumers prior to purchase. *After* a consumer completes the transaction and the money leaves her bank account, on the receipt, Chipotle discloses the hidden "Service Fee" "powers easy, integrated delivery."



**Figure 10**

26.     And this "Service Fee" quickly adds up.  For example, if a couple of hungry teenage surfers simply ordered two plain chicken burritos—without any extravagant add-ons like guacamole—the "Service Fee" will alone likely exceed five dollars.  Many small business owners or school clubs placing group orders for their employees or students will get hit even worse.  A group order of twenty steak burritos will cost $438.80—with $66.80 going to Chipotle as a 20% "Service Fee."

## CLASS ALLEGATIONS

27.     Plaintiff Hudson Gill seeks to represent a class of all United States residents who paid Chipotle a "Service Fee" while ordering food for delivery through Chipotle's website or application (the "Nationwide Class").

28.     Plaintiff Gill seeks to represent a class of all California residents who paid Chipotle a "Service Fee" while ordering food for delivery through Chipotle's website or application (the "California Subclass").

29.     Plaintiff Awad seeks to represent a class of all New York residents who paid Chipotle a "Service Fee" while ordering food for delivery through Chipotle's website or application (the "New York Subclass").

30.     Plaintiffs reserve the right to modify these class definition or add sub-classes as necessary prior to filing a motion for class certification.

31.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after considering of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment.

32.     Excluded from the Classes are Chipotle; any affiliate, parent, or subsidiary of Chipotle; any entity in which Chipotle has a controlling interest; any officer director, or employee of Chipotle; any successor or assign of Chipotle; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

33.    **Numerosity.**  Members of the Classes are so numerous that joinder of all members would be unfeasible and not practicable.  The exact number of Class Members is unknown to Plaintiffs at this time; however, it is estimated that there are millions of individuals in the Class.  Class Members can be readily identified from Chipotle's payment records and rewards program records.

34.    **Typicality.**  Plaintiffs claims are typical of the claims of the Classes because Plaintiffs, like all other members, visited Chipotle's  and/or app and paid these hidden Service Fees.

35.    **Adequacy.**  Plaintiffs are prepared to take all necessary steps to represent fairly and adequately the interests of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the members of the Classes. Plaintiffs are represented by attorneys with experience in the prosecution of class action litigation generally and junk fee litigation specifically.  Plaintiffs' attorneys are committed to vigorously prosecuting this action on behalf of the members of the Classes.

36.    **Common Questions of Law and Fact Predominate.**  Questions of law and fact common to the members of the Classes predominate over questions that may affect only individual members of the Classes because Defendant has acted on grounds generally applicable to the Classes.  Such generally applicable conduct is inherent in Defendant's wrongful conduct.  Questions of law and fact common to the Classes include, but are not limited to, the following: whether Defendant's conduct was false and intentionally misleading, and whether Plaintiffs and the proposed Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit.

37.    **Superiority.**  Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single

forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in the management of this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## CLAIMS FOR RELIEF

### COUNT I
**Violation Of The California's Unfair Competition Law
Cal. Bus. & Prof. Code § 17200, *et seq*.**

38.     Plaintiff Gill incorporates by reference the preceding paragraphs as if fully set forth herein.

39.     Plaintiff Gill brings this claim individually and on behalf of the Nationwide Class and California Subclass against Defendant.

40.     On February 9, 2024, Plaintiff Hudson Gill purchased a single Chicken Bowl with black and pinto beans, sour cream, light tomatillo-red chili salsa, extra cheese, white rice and extra chicken for delivery using the Chipotle app. He paid $25.50 for this Bowl.  On the app, Chipotle represented to him that there was $5.10 in tax and a $1.00 delivery fee. *After* Plaintiff Gill made his purchase, he discovered he only paid $1.62 in tax, and the remaining $3.48 went to Chipotle's coffers as a service fee.  Had he known this hidden service fee went to Chipotle, instead of the government, he would either have not made his purchase, or would have not been willing to pay as much as he did for his purchase.

41.     On March 3, 2024, Plaintiff Hudson Gill purchased a single Chicken Bowl with black and pinto beans, sour cream, light tomatillo-red chili salsa, light fresh tomato salsa, extra cheese, white rice and extra chicken for delivery using the

Chipotle app. He paid $24.50 for this Bowl. On the app, Chipotle represented to him that there was $5.10 in tax and a $1.00 delivery fee. *After* Plaintiff Gill made his purchase, he discovered he only paid $1.62 in tax, and the remaining $3.48 went to Chipotle's coffers as a service fee. Had he known this hidden service fee went to Chipotle, instead of the government, he would either have not made his purchase, or would have not been willing to pay as much as he did for his purchase.

42. On June 6, 2024, Plaintiff Hudson Gill purchased a single Chicken Bowl with black and pinto beans, sour cream, light tomatillo-red chili salsa, extra cheese, white rice and extra chicken for delivery using the Chipotle app. He paid $25.73 for this Bowl. On the app, Chipotle represented to him that there was $5.38 in tax and a $1.00 delivery fee. *After* Plaintiff Gill made his purchase, he discovered he in fact, only paid $1.71 in tax, and the remaining $3.67 he paid to Chipotle as a service fee. Had he known this hidden service fee went to Chipotle, instead of the government, he would either have not made his purchase, or would have not been willing to pay as much as he did for his purchase.

43. California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice." For the reasons discussed above, Defendant has engaged in unlawful, unfair, and fraudulent business acts or practices in violation of California Business & Professions Code § 17200.

44. By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful, fraudulent, and unfair conduct.

45. Defendant has violated the UCL's proscription against engaging in **Unlawful Business Practices** as a result of its violations of California's False Advertising Law; and additional violations of common law.

46. As more fully described above, Defendant's false and misleading marketing and advertising of its Fees to deceive reasonable consumers. In addition,

Defendant has committed unlawful business practices by, *inter alia*, making the false representations and omissions of material facts, as set forth more fully herein, and violating the common law.

47.     Plaintiff and members of the Class and Subclass reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

48.     Defendant has also violated the UCL's proscription against engaging in **<u>Unfair Business Practices</u>**.  Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

49.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein as noted above.

50.     Defendant has further violated the UCL's proscription against engaging in **<u>Fraudulent Business Practices</u>**.  Defendant's claims, nondisclosures, and misleading statements with respect to Service Fees, as more fully set forth above, were false, misleading, and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

51.     Plaintiff and members of the Class and Subclass suffered a substantial injury by paying those Service Fees.  Plaintiffs paid more for their food than they otherwise would have had they known that such hidden Service Fees were not lawfully required taxes.

52.     There is no benefit to consumers or competition from deceptively marketing, and omitting material facts about, the price of the tickets when the Estimated Fees Filter is turned on.

53.     Plaintiff and the members of the Class and Subclass had no way of reasonably knowing that the tickets they purchased were not as marketed or advertised.  Thus, they could not have reasonably avoided the injury each of them suffered.

54.     The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the Class and Subclass members.

55.     Pursuant to California Business and Professions Code § 17203, Plaintiff and the members of the Nationwide Class and California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the members of the Class and Subclass; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's attorneys' fees and costs.

**COUNT II**
**Violation Of The California False Advertising Law**
**Cal. Bus. & Prof. § 17500,** *et seq.*

56.     Plaintiff Gill realleges and reincorporates by reference all paragraphs alleged above.

57.     Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass against Defendant.

58.     Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the Class and Subclass and the public.  As described above, and throughout this Complaint, Defendant falsely represented Taxes as being higher than were, hid its Service Fees, and misrepresented the true costs of food deliveries.

59.     By its actions, Defendant disseminated uniform advertising regarding its food delivery costs across the United States and the State of California.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*.  Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

60.     The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive.

61.     Defendant continues to make the same misrepresentations complained of in this complaint.

62.     In making and disseminating these statements, Defendant knew, or should have known, its advertisements were untrue and misleading in violation of California law.  Plaintiff and other members of the Class and Subclass based their purchasing decisions on Defendant's omitted material facts.  The revenue attributable to the service fees charged in those false and misleading advertisements likely amounts to tens of millions of dollars.  Plaintiff and members of the Class and Subclass were injured in fact and lost money and property as a result.

63.     The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq*.

64.     As a result of Defendant's wrongful conduct, Plaintiff and members of the Class and Subclass lost money in an amount to be proven at trial.  Plaintiff and members of the Class and Subclass are therefore entitled to restitution as appropriate for this cause of action.

65.     Plaintiff and members of the Nationwide Class and California Subclass seek all monetary and non-monetary relief allowed by law, including restitution of

all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

**COUNT III**
**Violation Of The New York General Business Law § 349**

66.     Plaintiff Awad realleges and reincorporates by reference all paragraphs alleged above.

67.     Plaintiff Awad brings this claim individually and on behalf of the New York Subclass.

68.     On March 10, 2022, Plaintiff Clair Awad purchased a Sofritas Bowl with white rice, fresh tomato salsa, extra sour cream, guacamole, extra fajita veggies, romaine lettuce, roasted chili-corn salsa, and black beans, and a Mexican Coca-Cola for her herself. For her friends, she also purchased a Chicken Bowl with black beans guacamole, roasted chili-corn salsa, sour cream, cheese, fajita veggies, romaine letter, tomatillo-green chili salsa and white rice, a bottled water, a Pollo Asado Taco with and pinto beans, sour cream, light tomatillo-red chili salsa, extra cheese, white rice and extra chicken, a Chicken Bowl with brown rice, romaine lettuce, fresh tomato salsa, cheese, and sour cream, both a large and a small side of chips and guacamole, a Chicken Bowl with fajita veggies, cheese, sour cream, tomatillo-red chili salsa, roasted chili-corn salsa, and romaine lettuce, and a Veggie Bowl with black beans, guacamole, and white rice.  She ordered all these food items on the Chipotle App for delivery to an apartment in Manhattan, New York City, New York. She paid $135.45 for this order.  On the app, Chipotle represented to her that there was $19.79 in tax and a $1.00 delivery fee.  *After* Plaintiff Awad made her purchase, she discovered she only paid $9.82 in tax, and the remaining $9.97 went to Chipotle's coffers as a service fee.  Had she known this hidden service fee went to Chipotle, instead of the government, she would either have not made her purchase, or would have not been willing to pay as much as she did for her purchase.

69.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

70.     Defendant committed deceptive acts and practices by misleadingly and deceptively obscuring the itemization of its Service Fee and the added costs of food deliveries.

71.     Defendant committed deceptive acts and practices by misleadingly and deceptively hiding its "Service Fee" under the label "Tax." Accordingly, Plaintiffs and members of the Class and Subclass were misled into believing that the extra charges added to the ticket price were representative of governmentally imposed taxes and fees, when in actuality, a "Service Fee" was charged.

72.     Defendant's deceptive acts and practices were directed at consumers.

73.     Defendant's deceptive acts and practices are misleading in a material way because they deliberately make the itemization of extra charges harder to find, and fundamentally misrepresent the nature of the additional costs imposed by Defendant on food delivery purchasers. Consumers are more likely to pay artificially high taxes if they believe it would go towards publics schools, roads, and the like, instead of Chipotle's coffers.

74.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations, Plaintiff Awad and members of the New York Subclass were injured in that they would not have purchased the tickets, or would have paid substantially less for them, but for Defendant's obfuscation of the extra charges in an inconspicuous dropdown menu and its false and misleading representations that the extra charges included both fees and taxes.

75.     On behalf of herself and the New York Subclass, Plaintiff Awad seeks to recover their actual damages or fifty dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT IV
**Quasi-Contract**

76.    Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

77.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class and state Subclasses.

78.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiffs and the Classes to pay Chipotle more than they believed they were paying them.

79.    Chipotle accepted and retained this extra money in the form of hidden "Service Fees".

80.    Plaintiffs expected to receive something in return in exchange for this money that they believed was going to the government, such as better public schools, better roads, better policing, Medicare, Medicaid, or a stronger military, just to name a few.  This is part of the social contract all citizens enter into with the government. Plaintiffs never received any of those public services, because this money never went to the government.  Instead, it went to Chipotle, and Chipotle provides no public services.

81.    Defendant was unjustly enriched by this conduct

82.    Plaintiffs bring this claim for restitution in the alternative, in the event they have no other adequate remedy at law.

## COUNT V
**Unjust Enrichment**

83.    Plaintiffs reallege and reincorporates by reference all paragraphs alleged above.

84.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class and state Subclasses.

85.     To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

86.     Plaintiffs and members of the Class and Subclasses conferred benefits on Defendant by purchasing the tickets.

87.     Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and members of the Class and Subclasses' payment of Service Fees. Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that there were hidden fees at the end of the checkout process.  Those omissions caused injuries to Plaintiffs and members of the Class and Subclasses because they would not have purchased the food for delivery if the true facts were known.

88.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Class and Subclasses are unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## COUNT VI
### Fraud

89.     Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

90.     Plaintiffs bring this claim individually and on behalf of the Class and Subclasses.

91.     At the time Plaintiffs and members of the Class and Subclasses purchased their food for delivery tickets, Defendant did not disclose, but instead concealed its Service Fee and affirmatively misrepresented its Service Fee to be a Tax.

92.     Defendant also knew that its making fraudulent omissions and misrepresentations because it in the drop-down menu, it listed its Service Fee as separate and apart from Tax.

93.     Defendant also knew that the Service Fee it charged was material, and that a reasonable consumer would rely upon Defendant's omissions and misrepresentations in making purchasing decisions.

94.     Plaintiffs and members of the Class and Subclasses did not know—nor could they have known through reasonable diligence—that Defendant charged a Service Fee in lieu of a Tax.

95.     Plaintiffs and members of the Class and Subclass would have been reasonable in relying on Defendant's misrepresentations in making their purchasing decisions.

96.     Plaintiffs and members of the Class and Subclass had a right to reply upon Defendant's representations.

97.     Plaintiffs and members of the Class and Subclass sustained damages because of their reliance on Defendant's and misrepresentations, thus causing Plaintiffs and members of the Class and Subclass to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)     For an order certifying the putative Class and Subclasses, naming Plaintiff as the representative of the putative Class, and naming Plaintiff's attorneys as Class Counsel to represent the putative Class Members;

(b)     For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiffs and the putative Class and Subclasses on all counts asserted herein;

(d)     For actual and/or statutory damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded; and

(f)    For an order awarding Plaintiff and the putative Class their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the proposed Class, demand a trial by jury for all of the claims asserted in this Complaint so triable.

Dated: July 31, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ L. Timothy Fisher*
             L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        sbogdanovich@bursor.com

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: pfraietta@bursor.com

*Attorneys for Plaintiffs*