**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        sbogdanovich@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

*Attorneys For Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

| | |
|---|---|
| HUDSON GILL and CLAIR AWAD, individually and on behalf of all other persons similarly situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>CHIPOTLE MEXICAN GRILL, INC. Defendant. | Case No. 8:24-cv-01672-FWS (JDEx)<br><br>**OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br>Date: January 23, 2024<br>Time: 10:00 a.m.<br>Courtroom 10D<br><br>Hon. Fred W. Slaughter |

## TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION ................................................................................ 1

II.  THE SIGN-UP SCREENS PLAINTIFFS ENCOUNTERED ......................... 5

III.  LEGAL STANDARD .......................................................................... 12

    A.  Chipotle Bears The Initial Burden Of Establishing An Agreement To Arbitrate Was Formed ................................................ 12

    B.  California Law Applies, But New York Law Is The Same ................. 12

    C.  Categorization Of Internet Contracts ..................................... 13

IV.  ARGUMENT ................................................................................ 15

    A.  Chipotle Failed To Provide Reasonably Conspicuous Notice Of Its Hyperlinked Terms ..................................................... 15

        1.  Chipotle's Buried Terms Are Not Reasonably Conspicuous Because A Consumer Can Complete Signing Up Without Ever Having Seen Them ......................... 15

    B.  The Visual Elements of Chipotle's Tiny Terms Fail The *Berman* Test ................................................................ 26

V.  CONCLUSION ............................................................................ 32

1

# TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**CASES**

4

5

*Babcock v. Neutron Holdings, Inc.*,
   454 F. Supp. 3d 1222 (S.D. Fla. 2020) ....................................................26

6

7

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022)...........................................................*passim*

8

9

*Bretto v. AMC Ent. Holdings, Inc.*,
   2024 WL 4134844 (D. Kan. Sept. 10, 2024) .................................*passim*

10

*Cavanaugh v. Fanatics, LLC*,
   2024 WL 3202567 (E.D. Cal. June 26, 2024).................................*passim*

11

12

*Christian v. Pressed Juicery, Inc.*,
   2021 WL 4771801 (C.D. Cal. Apr. 23, 2021) .......................................25

13

14

*Cordas v. Uber Techs., Inc.*,
   228 F. Supp. 3d 985 (N.D. Cal. 2017) ..................................................25

15

16

*Cubria v. Uber Techs., Inc.*,
   242 F. Supp. 3d 541 (W.D. Tex. 2017) ................................................25

17

18

*Dickey v. Ticketmaster LLC*,
   2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) .......................................24

19

20

*Driskill v. Experian Info. Sols., Inc.*,
   2024 WL 4453292 (N.D. Cal. Oct. 8, 2024)..........................................24

21

22

*Feld v. Postmates, Inc.*,
   442 F. Supp. 3d 825 (S.D.N.Y. 2020).........................................4, 22, 23

23

*Fridman v. 1-800 Contacts, Inc.*,
   554 F. Supp. 3d 1252 (S.D. Fla. 2021) ...........................................3, 22

24

25

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012).................................................25

26

27

*Gaker v. Citizens Disability, LLC*,
   654 F. Supp. 3d 66 (D. Mass. 2023) ...................................3, 4, 14, 15

28

---

*Ghazizadeh v. Coursera, Inc.*,
   2024 WL 3455255 (N.D. Cal. June 20, 2024) ........................................................25

*Hansen v. LMB Mortg. Servs., Inc.*,
   1 F.4th 667 (9th Cir. 2021) .................................................................................12

*Hines v. Overstock.com, Inc.*,
   668 F. Supp. 2d 362 (E.D.N.Y. 2009).................................................................22

*In re Stubhub Refund Litig.*,
   2023 WL 5092759 (9th Cir. Aug. 9, 2023)..............................................5, 26, 29

*Jackson v. Amazon.com, Inc.*,
   65 F.4th 1093 (9th Cir. 2023)........................................................4, 5, 12, 21

*Keebaugh v. Warner Bros. Ent. Inc.*,
   100 F.4th 1005 (9th Cir. 2024) ...........................................................................13

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ..............................................................................12

*Lawrence v. Finicity Corp.*,
   716 F. Supp. 3d 851 (E.D. Cal. 2024)....................................................12, 14, 21

*Lee v. DoNotPay, Inc.*,
   683 F. Supp. 3d 1062 (C.D. Cal. 2023)...............................................................24

*Lee v. Ticketmaster LLC*,
   817 F. App'x 393 (9th Cir. 2020) .......................................................................24

*Mallh v. Showtime Networks Inc.*,
   2017 WL 5157247 (S.D.N.Y. Nov. 7, 2017) ......................................................25

*Maree v. Deutsche Lufthansa AG*,
   2021 WL 267853 (C.D. Cal. Jan. 26, 2021) .......................................................32

*Marshall v. Georgetown Mem'l Hosp.*,
   112 F.4th 211 (4th Cir. 2024)......................................................................*passim*

*Maynez v. Walmart, Inc.*,
   479 F. Supp. 3d 890 (C.D. Cal. 2020).................................................................25

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017).................................................................3, 4, 22, 23

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ............................................................................ 12

*Morrison v. Yippee Ent., Inc.*,
  2024 WL 4647296 ............................................................................... 31

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ....................................................... *passim*

*Oberstein v. Live Nation Ent., Inc.*,
  60 F.4th 505 (9th Cir. 2023) .............................................................. 14

*Peter v. DoorDash, Inc.*,
  445 F. Supp. 3d 580 (N.D. Cal. 2020) ............................................... 24

*Petrie v. GoSmith, Inc.*,
  360 F. Supp. 3d 1159 (D. Colo. 2019) ............................................... 26

*Rodriguez v. Best Buy Company*,
  2023 WL 8946206 (C.D. Cal. Nov. 14, 2023) ..................................... 25

*Sadlock v. Walt Disney Co.*,
  2023 WL 4869245 (N.D. Cal. July 31, 2023) ..................................... 31

*Selden v. Airbnb, Inc.*,
  4 F.4th 148 (D.C. Cir. 2021) ............................................................. 24

*Sellers v. JustAnswer LLC*,
  73 Cal. App. 5th 444 (2021) ....................................................... 13, 14

*Specht v. Netscape Commc'ns Corp.*,
  306 F.3d 17 (2d Cir. 2002) ........................................................ *passim*

*Strehl v. Guitar Ctr., Inc.*,
  2023 WL 9700041 (C.D. Cal. Nov. 3, 2023) .................................. *passim*

*UL LLC v. Space Chariot Inc.*,
  250 F. Supp. 3d 596 (C.D. Cal. 2017) ................................................. 7

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
  925 F. Supp. 2d 1185 (D. Colo. 2013) ............................................... 26

*Wilson v. Huuuge, Inc.*,
  944 F.3d 1212 (9th Cir. 2019) ............................................. 2, 3, 15, 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RULES**

Fed. R. Civ. P. 56 .................................................................................................. 12

## I.    INTRODUCTION

Plaintiffs sued Chipotle for tricking consumers into paying hefty junk fees on food delivery orders by deceptively designing its website and mobile app to hide those fees under clickable dropdown menus and "?" icons. Chipotle now claims the case should not be in Court because it *also* tricked consumers to agree to arbitrate by hiding *those* terms behind tiny, plain-looking hyperlinks buried at the bottom of screens that consumers likely never saw or even knew existed. *See generall*y, Motion to Compel Arbitration (ECF No. 14, "Motion"). Chipotle's Motion should be denied.

Before *and* shortly after filing this action,  Plaintiffs' counsel recorded videos of the same account creation process relied on by Chipotle's witness. *See* Declaration of Stefan Bogdanovich, Exhibits 1-2. As the videos show, Chipotle's hyperlinked Terms on both the website and mobile app are *only visible if one scrolls to the bottom of the webpage*. *Id*. This means that consumers can input all their personal information, click the "Create Account" button, and sign up for a Chipotle account *without having ever seen the submerged terms* Chipotle claims consumers are bound to. *Id*. These videos are corroborated by the Internet Archive's Wayback Machine screen captures of Chipotle's sign-up page on and around the dates Plaintiffs signed up for the accounts, which also show that, using normal browser zoom settings, Chipotle's terms are *only visible via scrolling*.

Since the early days of the internet, courts have refused to enforce hyperlinked terms where, as here, "plaintiffs could not have learned of the existence of those terms unless, prior to [creating their accounts], they had scrolled down the webpage." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 20 (2d Cir. 2002) (Sotomayor, J.). The reason is simple: "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). If consumers can complete a sign-up process without ever having seen hyperlinked terms, "there is

no reason to assume that users will scroll down to subsequent screens simply because screens are there." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (quoting *Specht*, 306 F.3d at 32). "Only curiosity or dumb luck might bring a user to discover the Terms." *Id.*

As another court in this District recently held under similar circumstances:

> The hyperlink to the [] Terms would be located at the bottom of the screen, where it is reasonabl[y] likely that it would not be visible to the user unless the user scrolled down or zoomed out. A purchaser who clicks the [Create Account] button may be 'left unaware that contractual terms were even offered, much less … manifest[ed] acceptance of those terms.' Thus, enforcing the browsewrap agreement would be inappropriate. As Defendant concedes [], the fact that a user clicked the [Create Account] button does not show that the user had notice of, or manifested assent to, the [] Terms.

*Strehl v. Guitar Ctr., Inc.*, No. LA CV23-02603 JAK (RAO), 2023 WL 9700041, at *6 (C.D. Cal. Nov. 3, 2023) (internal citations omitted).

Pointing to over a dozen cases—but failing to quote a single one—Chipotle proclaims that: "courts around the country … have *consistently* found that online sign-up flows, like the one used by Chipotle, create binding and enforceable arbitration agreements." Motion at 1 (emphasis added). Not true. What the Ninth Circuit has *actually* said is that "website designers who knowingly choose sign-in wrap … designs *practically invite litigation* over the enforceability of their sites' terms and conditions." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 868, n.4 (9th Cir. 2022) (Baker, J., concurring) (emphasis added). In fact, one of the cases Chipotle *mis*cites for this proposition—*Cavanaugh v. Fanatics, LLC*, --- F. Supp. 3d ---, 2024 WL 3202567, *5 (E.D. Cal. June 26, 2024)—*actually* held that "the account creation screen failed to provide sufficient notice of the arbitration

agreement," for the exact same notice problems Plaintiffs take issue with here. *See infra*, page 22.

Instead, the Ninth Circuit  "decline[s] to enforce agreements where the terms are available only if users scroll to a different screen." *Wilson*, 944 F.3d at 1221. So courts hold that terms buried at the bottom of scrolling sign-up pages like the one Chipotle used here are *not* enforceable. *See, e.g.*,  *Strehl*, 2023 WL 9700041, at *6; *Specht*, 306 F.3d at 32; *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 219 (4th Cir. 2024) (arbitration agreement was unenforceable where plaintiff "could enter all necessary updates and submit her application without ever scrolling down to the 2016 arbitration agreement."); *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1263 (S.D. Fla. 2021) (terms were unenforceable where "a user can … set[] up an account and order[] contact lenses, without ever having to scroll to the bottom of the Website's pages that feature the hyperlink to the Terms"); *Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66, 75 (D. Mass. 2023) (terms were unenforceable where "a user could—and in all likelihood, would—click on the button without ever reaching the portion of the page disclosing the terms"); *Bretto v. AMC Ent. Holdings, Inc.*, --- F. Supp. 3d ---, 2024 WL 4134844, at *6 (D. Kan. Sept. 10, 2024) (terms were unenforceable where "a consumer can select a payment method without ever scrolling and seeing the terms and conditions notice.").

Chipotle cites *no* case to the contrary. In fact, *every one* of the "sign-up flow" cases Chipotle cites is distinguishable because, in all those cases, the terms were either immediately visible or there were no concerns users would create accounts without having ever seen the terms. *See infra*, pages 22-26 (distinguishing Chipotle's cited cases, one by one, with actual quotations).

Chipotle also asserts that its "sign-up flow … is *nearly identical* to that discussed and enforced by the Second Circuit and Southern District of New York, in *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) …  and *Feld v.*

*Postmates*," 442 F. Supp. 3d 825, 830 (S.D.N.Y. 2020). Motion at 13 (emphasis added). This, too, is not true. What *Meyer actually* said was that "the entire screen is visible at once, and *the user does not need to scroll beyond what is immediately visible* to find notice of the Terms of Service." 868 F.3d at 78 (emphasis added). And what *Feld actually* said was that the "notice showing the hyperlinks … appears directly *above* the sign-up options on the same screen *without requiring the user to scroll to see the notice*." 442 F. Supp. 3d at 830 (emphasis added). Yet here, unlike in *Meyer* or *Feld*, the entire screen is not immediately visible. And because Chipotle's notice is not placed above, but *below* the "CREATE AN ACCOUNT" button, consumers can complete Chipotle's sign-up process without ever having scrolled down and seen any notice telling them they would be agreeing to any terms. Courts "accord[] significant weight to the fact that the terms appeared below the [relevant] button … [because] a user could—and in all likelihood, would—click on the button without ever reaching the portion of the page disclosing the terms." *Gaker*, *supra*, 654 F. Supp. 3d at 75 (denying motion to compel arbitration).

To be sure, on reply, Chipotle may raise various factual arguments about how Plaintiffs would've, could've, or should've seen its notice:

- "without any need for the user to scroll at all," "depending on the configuration of the monitor and browser," *Specht*, 306 F.3d at 27, or
- "because Plaintiff did not submit a declaration or evidence that he did not" see the notice, *Strehl*, 2023 WL 9700041, at *6, or
- because "'common sense' suggests consumers would scroll to the end of the page to ensure that they had completed all fields," *Bretto*, 2024 WL 4134844, at *6.

None of those arguments—or others that Chipotle might come up with on reply—would move the needle in satisfying *Chipotle's burden of proof*. "The burden is on the party seeking arbitration to show notice and assent." *Jackson v.*

*Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023). Making Plaintiffs prove a
lack of notice "stands the law's notice requirement on its head." *Id*. "[T]he onus must
be on website owners to put users on notice of the terms to which they wish to bind
consumers." *Id*. (quoting *Nguyen*, 763 F.3d at 1179).

Worse yet, even if a curious consumer *had* scrolled down to the bottom of the
screen, it is far from certain that they would have noticed Chipotle's hyperlinked
terms. Whereas in both *Meyer* and *Feld*, the hyperlinks were "in blue, the color
typically used to signify the presence of a hyperlink," *Berman*, 30 F.4th at 854, here,
in contrast, the terms appear in the tiny, plain-looking font that looked the same as
the rest of the surrounding text. *See* ECF 14-1, Declaration of Jason Scoggins.
Chipotle's links are only differentiated by underlining in the web browser screen, or
bolding in the mobile app screen. But "[a] web designer must do more than simply
underscore the hyperlinked text in order to ensure that it is sufficiently 'set apart'
from the surrounding text." *Berman*, 30 F.4th at 857. And simply bolding words will
not be enough either. *In re Stubhub Refund Litig.*, 2023 WL 5092759, at *2 (9th Cir.
Aug. 9, 2023). Because even Chipotle's own cited case held it "will not depart from
the overall trend that finds hyperlinks must be offset in a more obvious way than the
underlining used on the [] sign-up page at issue," *Cavanaugh*, 2024 WL 3202567 at
*5, neither should this Court in this case.

## II.    THE SIGN-UP SCREENS PLAINTIFFS ENCOUNTERED

According to Chipotle's records, Plaintiffs signed up for Chipotle rewards
accounts on August 5, 2020 and September 1, 2021, respectively. Scoggins Decl., ¶¶
11 and 13. To that end, Chipotle's declarant submits a screenshot of what he says is
the Chipotle account creation screen on those dates. *Id*. ¶ 5. But according to the
Internet Archive's Wayback Machine, on August 5, 2020, the same day Plaintiff Gill
signed up for an account—the webpage version of the account creation screen, on a

web browser set to 100% zoom, the top of the page would not show notice of *any* terms. *See* Bogdanovich Decl., ¶ 10.



An internet user would reach this page by going to the Wayback Machine's August 5, 2020 entry for the chipotle.com website[1] and clicking the "CREATE AN ACCOUNT" button next to the "JOIN CHIPOTLE REWARDS" text on the main page. *See* Bogdanovich Decl., ¶ 11, next page.

---

[1] *See* https://web.archive.org/web/20200805193228/https://www.chipotle.com/.

According to the Wayback Machine, the Account Creation page on Chipotle.com looked almost identical on August 31, 2021, a day before Plaintiff Awad purportedly signed up for an account. *See* Bogdanovich Decl., ¶ 12, pictured on the next page. The only difference between the August 5, 2020 page and the August 31, 2021 is the background, which appears as brown on the first page and white in the second. *See id*., next page, and compare https://web.archive.org/web/20200805193228/https://www.chipotle.com/ with https://web.archive.org/web/20210831224246/https://www.chipotle.com/. Indeed, the Court can also "take[] judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 604, n.2 (C.D. Cal. 2017) (collecting cases).

1
2
3
4
5
6
7
8
9
10
11



12  Bogdanovich Decl., ¶ 12 (top of the page, which does not show Chipotle's terms).

13         In both the August 5, 2020 and August 31, 2021 Account Creation screens, the

14  textual notice of Chipotle's hyperlinked Terms of Use and Rewards Terms and

15  Conditions only become visible to consumer if he or she scrolls down the page.

16



17
18
19
20
21
22
23
24
25
26

27  Bogdanovich Decl., ¶ 10 (August 5, 2020 page, scrolled down at 100% zoom).

28



Bogdanovich Decl., ¶ 12 (August 31, 2021 page, scrolled down at 100% zoom).

Before filing this action, Plaintiffs' counsel recorded a video of the account creation process on the website. The account screen looks identical to the August 31, 2021 page depicted above and shows a consumer can click the "CREATE AN ACCOUNT" button without ever having seen the submerged sets of hyperlinked Chipotle Terms. *See* Bogdanovich Decl., Ex. 1, at 0:36, below.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Chipotle's declarant introduces a different webpage showing a different rewards account creation screen. *See* Scoggins Decl., ¶ 5. He does not provide any detail about how he reached this page. Despite declaring the exact dates that Plaintiffs signed up for their rewards accounts, Chipotle's witness does not tell us whether Plaintiffs signed up through his account creation webpage, the webpage as it appears on the Internet Archive, the Chipotle mobile app, or something else.

Chipotle's declarant also submits an image of the mobile app account creation screen. *See* Scoggins Decl., ¶ 6, below.

But Chipotle's image appears to show an *incomplete* view of the Chipotle mobile app's account creation page. Before filing this action, Plaintiffs' counsel saved images of this account creation page as well. Bogdanovich Decl., ¶¶ 14-15. The page is a long form that requires scrolling down *three* screens to view the entirety of the page's contents. *See* Bogdanovich Decl., ¶ 14 (three sequential screens showing what is presented as a consumer continues to scroll down the page).



Significantly, as the first image two images show, consumers can click the "CREATE ACCOUNT" button without ever seeing a reference to *any* terms. On August 1, 2024, Plaintiffs' counsel also recorded a video of the account creation process on the Chipotle mobile app. The account creation page looks identical to the one depicted above and shows a consumer can press the "CREATE ACCOUNT" button without ever having seen the submerged hyperlinked Chipotle Terms. *See* Bogdanovich Decl., Ex. 2.

### III.    LEGAL STANDARD

#### A.    Chipotle Bears The Initial Burden Of Establishing An Agreement To Arbitrate Was Formed

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Chipotle, "as the party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). This means "the burden is on … the party seeking arbitration to show that it provided notice of [its terms] and that there was mutual assent to the contractual agreement to arbitrate." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023).

In making this determination, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). This means "[t]he party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inferences in that party's favor, and only when no genuine disputes of material fact surround the arbitration agreement's existence … may the court compel arbitration." *Lawrence v. Finicity Corp.*, 716 F. Supp. 3d 851, 881 (E.D. Cal. 2024) (quotation omitted).

#### B.    California Law Applies, But New York Law Is The Same

"In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation. *Berman*, 30 F.4th at 855. Here, because Chipotle is a California corporation and Plaintiff Gill is a California citizen, Complaint ¶¶ 9 and 11, California law applies. In Plaintiff Awad's case, because she is New York citizen, Complaint ¶ 10, the only other state law that could apply is New York. However, even for Ms. Awad, "we need not decide which

State's law governs 'because both California and New York law dictate the same outcome.'" *Berman*, 30 F.4th at 855.

"To form a contract under New York or California law, the parties must manifest their mutual assent to the terms of the agreement." *Id*. "To avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements such as those at issue here have devised rules to determine whether meaningful assent has been given." *Id*. Where, as here, "the website operator [does not] show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory *only if* … the website provides reasonably conspicuous notice of the terms to which the consumer will be bound." *Id*. at 856 (emphasis added).

### C.     Categorization Of Internet Contracts

In general, internet contracts are categorized on a "spectrum" of enforceability, with "browsewrap" being the weakest form of notice, and "sign-in wrap" being the second-weakest form of notice. *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021). "The first, a browsewrap agreement, is 'one in which an internet user accepts a website's terms of use merely by browsing the site.' Courts have consistently held this type of agreement to be unenforceable." *Keebaugh v. Warner Bros. Ent. Inc*., 100 F.4th 1005, 1014 (9th Cir. 2024) (citing *Sellers*, 73 Cal. App. 5th at 463). "Sign-in wrap agreements fall somewhere in the middle." *Sellers*, 73 Cal. App. 5th at 471. While "sign-in wraps do include a textual notice indicating the user will be bound," the button clicked or the box checked does not use the words "I agree." *Id*.  Instead, sign-in wraps use "*some other* button that [consumers] would otherwise need to click to continue with their transaction … most frequently … 'sign in' or 'sign up.'" *Id*. (emphasis in original). Making consumers click on "*some other* button" significantly undermines the conspicuousness of any notice because "it is not apparent that the consumer is aware that they are agreeing to contractual terms

simply by clicking some other button." *Id.* The Ninth Circuit has more than once "emphasiz[ed] that … this hybrid form of agreement … invites second-guessing," *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023), and "practically invite[s] litigation," *Berman*, 30 F.4th at 868, n.4. Sign-in wrap agreements are frequently found to be *unenforceable*, as Chipotle's own cited cases illustrate. *Cavanaugh*, 2024 WL 3202567, at *5 (holding that "the account creation screen failed to provide sufficient notice of the arbitration agreement."); *accord Berman*, 30 F.4th at 858 (same).

Courts either find scrolling notices like the one Chipotle employed here to be unenforceable "browsewrap" or questionable "sign-in wrap" (sometimes referred to as "hybridwrap"). *See Strehl*, *supra*, 2023 WL 9700041, at *6 (C.D. Cal. Nov. 3, 2023). If consumers fail to scroll down to bottom of the page, then Chipotle's agreement is essentially a "browsewrap agreement[] because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Id.* at *6 (citing *Berman*, 30 F.4th at 856, in turn citing *Nguyen*, 763 F.3d at 1175). On the other hand, if curious consumers do scroll to the bottom of the page, then they would discover textual notice informing them that the act of clicking "*some other* button" constitutes assent to Chipotle's terms, and thus be "sign-in wrap." *Sellers*, 73 Cal. App. 5th at 471.

Yet categorizing Chipotle's notice is only "a useful tool for framing this analysis." *Gaker*, 654 F. Supp. 3d at 75. "Although categorization is important, it is not dispositive. Ultimately, the question is whether the disclosure provides reasonably conspicuous notice." *Lawrence*, 716 F. Supp. 3d at 882. And no matter what courts have chosen to call Chipotle's chosen form of scrolling notice, they have all consistently held that the notices buried at the bottom of screens are not reasonably conspicuous. *Strehl*, 2023 WL 9700041, at *6; *Marshall*, 112 F.4th at

219-20; *Specht*, 306 F.3d at 32; *Bretto*, 2024 WL 4134844, at *6; *Gaker*, 654 F. Supp. 3d at 75.

## IV.    ARGUMENT

### A.    Chipotle Failed To Provide Reasonably Conspicuous Notice Of Its Hyperlinked Terms

#### 1.    Chipotle's Buried Terms Are Not Reasonably Conspicuous Because A Consumer Can Complete Signing Up Without Ever Having Seen Them

Chipotle failed to provide reasonably conspicuous notice of its terms by burying them at the bottom of the Account Creation page on both its website and mobile app, where consumers were unlikely to ever see them, unless—by "curiosity or dumb luck," *Wilson*, 944 F.3d at 1221—they happened to scroll down to bottom of the page. "[C]ourts decline to enforce agreements where the terms are available only if users scroll to a different screen." *Id.* (citing *Specht*, 306 F.3d at 32) (both applying California law); *accord Marshall*, 112 F.4th at 219 ("in the internet context, courts have rejected constructive notice claims based on information that 'would have become visible to [users] only if they had scrolled to the next screen.'") (citing cases, also including *Specht*).

"Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. Courts thus refuse to find "inquiry notice … where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it." *Nguyen*, 763 F.3d at 1177 (*citing Specht*, 306 F.3d at 23). For good reason: "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Id.* at 1179.

**Three cases are particularly instructive.** The first is *Specht*. In 2002, then-Circuit Judge Sonia Sotomayor was "asked to determine whether plaintiffs … by acting upon defendants' invitation to download free software made available on

defendants' webpage, agreed to be bound by the software's license terms (which included the arbitration clause at issue), even though plaintiffs could not have learned of the existence of those terms unless, prior to executing the download, they had scrolled down the webpage to a screen located below the download button." *Specht*, 306 F.3d at 20. The court held "that a reasonably prudent Internet user in circumstances such as these would not have known or learned of the existence of the license terms before responding to defendants' invitation to download the free software, and that defendants therefore did not provide reasonable notice of the license terms." *Id*. "The sole reference to SmartDownload's license terms on the 'SmartDownload Communicator' webpage was located in text that would have become visible to plaintiffs only if they had scrolled down to the next screen." *Id*. at 23. Because "Plaintiffs were responding to an offer that did not carry an immediately visible notice of the existence of license terms … there is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there." *Id*. at 31-32. There was thus no "reasonably conspicuous notice." *Id*. at 32.

And while *Specht* applied California law, the Ninth Circuit has described it as "the leading authority on the enforceability of [hyperlinked] terms under New York law." *Nguyen*, 763 F.3d at 1177. So it carries great weight in both Plaintiffs' cases.

///
///
///
///
///
///
///
///
///

More recently, in *Strehl v. Guitar Center*, Judge Kronstadt held that the following webpage failed to provide reasonably conspicuous notice:



2023 WL 9700041, at *2.

In *Strehl*, the court likewise held there was no reasonably conspicuous notice, in part, because "Plaintiff proffers evidence that when a web browser is set to the default zoom of 100% … the user must either zoom out or scroll down in order to

view … the statement, 'By placing your order, you agree to Guitar Center's Purchase Terms and Conditions.'" *Id.* at *2.; *see also id.*, below (screenshot showing only the top of the page at 100% zoom).



The court noted that, "the fact that a user clicked the Complete Order button does not show that the user had notice of, or manifested assent to, the [] Terms." *Id.* at *6. The page thus failed to give reasonably conspicuous notice because of the "*inconspicuous … placement* of the Purchase Terms." *Id.* at *7 (emphasis added).

Most recently, in *Bretto v. AMC*, *supra*, another court held a defendant failed to provide "reasonably conspicuous notice" of its terms because "an AMC consumer could purchase movie tickets without *ever* seeing AMC's warning about its terms and conditions." 2024 WL 4134844, at *6. In *Bretto*, Defendant's "terms and conditions appear at the bottom of the screen, under the payment method section of the webpage." *Id.*



AMC's Terms and Conditions ➡

By selecting Purchase, I agree to the **AMC Terms and Conditions**.

*Id*.

But this, too, was insufficient because "consumers can select a payment method without scrolling to the bottom of the page. So, a consumer could select a payment method and complete a purchase without AMC's notice of terms and conditions ever appearing on the consumer's screen." *Id*. "Courts routinely cite visibility of terms—without the need to scroll—as an important factor for determining whether those terms are sufficiently conspicuous. And for good reason: Contract terms shouldn't bind consumers who had no reason to know those contract terms existed." *Id*. (internal citations omitted).

**<u>Chipotle's screens likewise fail to give reasonably conspicuous notice of its terms.</u>** Just like in *Specht*, *Strehl*, *Bretto*, here, consumers can complete Chipotle's Rewards account creation process without having ever seen the textual notice buried at the bottom of the page. Bogdanovich Decl., Exs. 1-2. Thus, consumers would

never know any of Chipotle's terms were offered, much less that their act of signing up signified their assent to those terms. Simply put, "courts decline to enforce agreements where the terms are available only if users scroll to a different screen" because consumers would only ever discover these agreements by "curiosity or dumb luck." *Wilson*, 944 F.3d at 1221 (9th Cir. 2019). As Plaintiffs' evidence shows, consumers like Plaintiffs could have completed inputting all their personal information and clicked the "CREATE AN ACCOUNT" button without ever scrolling down the bottom of the page.



Bogdanovich Decl., Ex. 1 at 0:36.

"Plaintiffs were [thus] responding to an offer that did not carry an immediately visible notice of the existence of [Chipotle's] terms." *Specht*, 306 F.3d at 31. "Where a user can complete her business on one screen, 'there is no reason to assume that [she] will scroll down to subsequent screens simply because screens are there.'" *Marshall*, 112 F.4th at 219 (citing *Specht*, 306 F.3d at 32). To be sure, here, as in many other scrolling notice cases, a consumer "may well have known that there was 'unexplored' territory below the screens on which she was operating. But without

more, she was not on inquiry notice that this territory included a contract offer and she was not obliged to go exploring for one." *Id.* 219-20 (again citing *Specht*, 306 F.3d at 32).

**Factual Uncertainties Are Resolved In Plaintiffs' Favor.** As noted previously, it is unclear based on this record which pages Plaintiffs viewed, via which device, and what their display and zoom settings were when they had signed up for their Chipotle Rewards Accounts. Nevertheless, these and other factual uncertainties are all resolved in Plaintiffs' favor, because "[t]he burden is on the party seeking arbitration to show notice and assent." *Jackson*, 65 F.4th at 1100. So, "[t]he party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inferences in that party's favor, and only when no genuine disputes of material fact surround the arbitration agreement's existence … may the court compel arbitration." *Lawrence*, 716 F. Supp. 3d at 881 (quotation omitted).

Indeed, the same was true also true in *Specht*, *Strehl*, and *Bretto*, where the defendants in those cases also raised factual uncertainties that failed to persuade. In *Specht*, the defendants asked for a new trial on the scrolling notice issue, because "on some computers, depending on the configuration of the monitor and browser, ... [terms] link 'appears on the first screen, without any need for the user to scroll at all.'" 306 F.3d at 27. The court denied the request because "*defendants* did not advance [that issue] below." *Id*. at 28 (emphasis added). Likewise, in *Strehl*, the defendant complained that "it should be assumed that Plaintiff [had scrolled to bottom of the page containing the hyperlinked terms and] clicked the second 'Complete Order' button  … because Plaintiff did not submit a declaration or evidence that he did not do so." 2023 WL 9700041, at *6. Citing *Jackson*, the court rejected this argument because it sought to flip the burden of proof. *Id.* "It is not Plaintiff's burden to demonstrate that he did not assent to the terms by not clicking

the second 'Complete Order' button. Rather, the Defendant has the burden ... Because Defendant has not provided any such evidence, it has not met its burden." *Id*. And in *Bretto*, the defendant argued that "'common sense' suggests consumers would scroll to the end of the page to ensure that they had completed all fields." 2024 WL 4134844, at *6. The *Bretto* court rejected that argument as well, because "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Id*. (citing *Nguyen*, 763 F.3d at 1179).

At bottom, courts properly deny motions to compel arbitration where none of the "evidence submitted by [a moving] Defendant refute[s] Plaintiff's sworn statement that she … could not even see the link to them without scrolling down to the bottom of the screen—an action that was not required to effectuate her purchase." *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010); *accord Fridman*, 554 F. Supp. 3d at 1263 (denying motion to compel where "Defendant has provided no evidence to rebut Plaintiff's assertion that a user can … set[] up an account … without ever having to scroll to the bottom of the Website's pages that feature the hyperlink to the Terms.")

**Chipotle's cited cases are all distinguishable because in those cases, the terms were immediately visible.** Chipotle says that its "sign-up flow … is *nearly identical* to that discussed and enforced by the Second Circuit and Southern District of New York, in *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) … and *Feld v. Postmates*," 442 F. Supp. 3d 825, 830 (S.D.N.Y. 2020). Motion at 13 (emphasis added). Not so. By Chipotle's own admission, "[i]n both [those] cases … the entire screens were visible at once." *Id*. As such, "*the user does not need to scroll beyond what is immediately visible* to find notice of the Terms of Service." *Meyer*, 868 F.3d at 78 (emphasis added); *accord Feld*, 442 F. Supp. 3d at 830. Here, of

course, Chipotle's screens are not all entirely visible, and user would never see Chipotle's terms if he or she never scrolled down.

Worse yet, in both *Meyer* and *Feld*, the "hyperlinks are in blue," 868 F.3d at 78; *accord Feld*, 442 F. Supp. 3d at 832, while here, Chipotle's hyperlinks are in the same plain-looking font as the rest of the surrounding text. *Compare* 868 F.3d at 82, Appendix B *with* Scoggins Decl., ¶ 6.

  

This "is a critical difference. The hyperlink in [*Meyer*] was in a contrasting color. Numerous cases have found mere underlining [or bolding] of a hyperlink to be insufficient." *Cavanaugh*, 2024 WL 3202567, at *5 (E.D. Cal. June 26, 2024) (collecting cases). And the links were not just in different color, but in "blue, the color typically used to signify the presence of a hyperlink." *Berman*, 30 F.4th at 854. As explained more fully in the next section, this also undermines conspicuousness because "[c]onsumers cannot be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to 'ferret out hyperlinks.'" *Id.* at 857. And while Chipotles cites *Cavanaugh*, the court there *actually* held that "the account creation screen failed to provide sufficient notice of the arbitration agreement," because "the Court will not depart from the overall trend that finds hyperlinks must be offset in a more obvious way than the underlining used

1    on the Fanatics sign-up page at issue in this case." 2024 WL 3202567 at *5.

2    *Cavanaugh* only held there was reasonably conspicuous notice on a separate

3    "Complete Order/Place Order Screen," where the "TOU hyperlink is blue in color."

4    *Id*. at *6. But here, Chipotle's hyperlinks were not blue on *any* screen.

5         Chipotle's other cited "sign-up flow" cases, *see* Motion at 1-2 and 11-13, are

6    distinguishable for the same reasons. In *Lee v. Ticketmaster LLC*, 817 F. App'x 393,

7    395 (9th Cir. 2020), the court found the terms were reasonably conspicuous because,

8    "directly above the [Place Order] button, the website displayed the phrase, 'By

9    clicking 'Place Order,' you agree to our Terms of Use,' where … 'Terms of Use'

10   [hyperlink] was displayed in blue font," such that a consumer would have necessarily

11   seen it. *Accord Dickey v. Ticketmaster LLC*, 2019 WL 9096443, at *6 (C.D. Cal.

12   Mar. 12, 2019) (same). In *Selden v. Airbnb, Inc*., 4 F.4th 148, 156–57 (D.C. Cir.

13   2021), "the sign-in appeared on a single screen for an iPhone user like Selden and

14   required no scrolling to see the notice of the Terms of Service," the hyperlinks were

15   in "red text … set off from the surrounding black text," and the "notice was 'clearly

16   legible, appropriately sized, and unobscured by other visual elements.'" In *Peter v.

17   DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020), the "sign-up page looks

18   markedly similar to the page approved by *Meyer*. The screens are similarly

19   uncluttered and wholly visible." In *Driskill v. Experian Info. Sols., Inc*., --- F. Supp.

20   3d ---, 2024 WL 4453292, at *3 (N.D. Cal. Oct. 8, 2024), "text immediately above

21   the 'Create Your Account' button [said] … 'By clicking 'Create Your Account': I

22   accept and agree to your Terms of Use Agreement…' The phrase 'Terms of Use

23   Agreement'… was a blue hyperlink." (Internal citations omitted). In *Lee v.

24   DoNotPay, Inc*., 683 F. Supp. 3d 1062, 1070-71 (C.D. Cal. 2023), "[t]he

25   hyperlink[ed Terms and Conditions] is underlined and formatted in bright magenta

26   which clearly set apart from the surrounding [gray] text," was "located

27   immediately below the 'Continue' button," and there was no evidence that users

28

OPPOSITION TO MOTION TO COMPEL ARBITRATION                                    24
CASE NO. 8:24-CV-01672-FWS (JDEx)

could click the button without seeing it. In *Rodriguez v. Best Buy Company*, 2023 WL 8946206, at *1 (C.D. Cal. Nov. 14, 2023), "Right above [the Place Order] button, in black and blue type face, was the following sentence: 'By placing your order, you agree to our BestBuy.com Terms and Conditions.'" (Internal citations omitted). In *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012),"immediately below [the Sign Up] button" was the text, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and there was no evidence that users could click the button without seeing it. In *Ghazizadeh v. Coursera, Inc.*, --- F. Supp. 3d ---, 2024 WL 3455255, at *10 (N.D. Cal. June 20, 2024), "the hyperlinked TOU here is directly below the 'Sign Up' button," on a "simple and uncluttered page," and there was no evidence that users could click the button without seeing it. In *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 895 (C.D. Cal. 2020), "[t]o complete the order, the customer must click a blue 'Place Order' button" that is situated immediately below the 'Privacy Policy' and 'Terms of Use' agreement." In *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017), consumers were "presented with the notice: 'By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy.'… no account could be created unless the user navigated through the screen containing this notice, the same screen required the new registrant to click "DONE" in order to create an account." *Accord Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541, 548 (W.D. Tex. 2017) (same).

The rest of the "sign-up flow" cases Chipotle cites *do not* even involve sign-in wrap. Instead, they feature clickwrap—where consumers necessarily see the Terms immediately next to the box they must check. *See Christian v. Pressed Juicery, Inc.*, 2021 WL 4771801, at *1 (C.D. Cal. Apr. 23, 2021) ("Next to each box, there is a statement confirming that checking the box indicates the customer's agreement to the terms and conditions"); *Mallh v. Showtime Networks Inc.*, 2017 WL 5157247, at *2

(S.D.N.Y. Nov. 7, 2017) ("The following language appeared in small grey text next to that white box: 'I have read and agree to the Terms of Use, Privacy Policy, and Video Services Policy.'… To complete the purchase, users were required to check [that] small white box."); *Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159, 1162 (D. Colo. 2019) ("the acknowledgement next to the check box…  states 'I have read and agree to the terms & privacy policy.'"); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1188 (D. Colo. 2013) ("Customers… had to click a box to confirm that they agreed to a set of terms and conditions.") *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1232 (S.D. Fla. 2020) is another clickwrap case where consumers clicked an "I Agree" button with text above the button stating "By tapping 'I Agree'… I confirm that I … agreed to Lime's User Agreement."

### B.    The Visual Elements of Chipotle's Tiny Terms Fail The *Berman* Test

Even assuming Plaintiffs had scrolled down to the bottom of Chipotle's sign-up screens, Chipotle's notice would *still* be inconspicuous because Chipotle further hid its hyperlinked terms within large text blocks of tiny, plain-looking font.

"First, to be conspicuous in this context, a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856. Here, however, the textual notice containing Chipotle's hyperlinked terms were smaller than any other text on the page.

"Second … the fact that a hyperlink is present must be readily apparent. Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists." *Berman*, 30 F.4th at 857. Similarly, bolding alone is also insufficient. *See In re Stubhub Refund Litig.*, 2023 WL 5092759, at *2 (9th Cir. Aug. 9, 2023). Here, in web browser version of the Chipotle's sign-up page, the hyperlinked terms are only differentiated by underscoring, and on the mobile app version, they are only

1   differentiated by bolding.[2] Indeed, the account creation screens at issue in this case

2   look similar to the ones the Ninth Circuit in *Berman* and *StubHub* held were

3   insufficiently conspicuous. A side-by-side comparison between the *Berman* screen,

4   30 F.4th at 868, Appendix A, and Chipotle's August 30, 2021 web browser sign-up

5   screen, Bogdanovich Decl., ¶ 16 (zoomed out at 75% to show the entire page) is

6   reproduced on the next page.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

    [2] Plaintiffs counsel's more recent screen recording of Chipotle's mobile app account
27   creation page shows the hyperlinks are in a slightly different shade of brown from
    the rest of the surrounding brown text.
28

OPPOSITION TO MOTION TO COMPEL ARBITRATION                                        27
CASE NO. 8:24-CV-01672-FWS (JDEx)

Worse still, *Berman* did not just say such notice failed to meet the reasonably conspicuous requirement, but that it was "*[f]ar* from meeting the requirement." 30 F.4th at 857 (emphasis added). Its textual notice was "the antithesis of conspicuous. It is printed in a tiny gray font … so small that it is barely legible to the naked eye."

*Id.* at 856-57. Here, as the side-by-side comparison shows, Chipotle's notice is in a font that is just as small, if not *even smaller* that the "tiny" *Berman* font.

A side-by-side comparison of the relevant portion of the mobile app sign-up screen the court in *StubHub* found was insufficiently conspicuous, *see* 2023 WL 5092759, at *2, Appendix A, and the Chipotle mobile app sign-up screen, Scoggins Decl., ¶ 6, is also reproduced below.




Worse still, in both *Berman* and *StubHub*, the hyperlinked terms appeared in uncluttered text blocks between one to two lines.

Here, in contrast, Chipotle's terms appear in text blocks of **nine** lines on the web browser screen, in **twenty two** lines on the mobile app screen in Plaintiffs' counsel image. Even Chipotle's *cropped* image shows a block of **five** lines.

By creating this account, I am confirming I am 13 years of age or older, will be automatically enrolled in Chipotle Rewards, will receive email updates, promotions and offers from Chipotle, and agree to Chipotle's Privacy Policy, Terms of Use and Chipotle Rewards Terms & Conditions.

*By opting in to text, you agree to receive Chipotle updates and offers via text. Recurring marketing messages will be sent to your account mobile number using automated technology. Consent is not a condition of purchase. Standard msg and data rates may apply. Text STOP to cancel. Text HELP for help.

Bogdanovich Decl., ¶ 12.

By joining Chipotle Rewards you are confirming you are 13 years or older, agree to receive email updates, promotions, and offers from Chipotle, and agree to Chipotle's Privacy Policy and Terms & Conditions of the Program.

The information you provide will be used to create and administer your account, allow you to participate in rewards benefits, birthday benefits, other offers, and for other marketing purposes. Visit our Privacy Policy to learn more.

*If you sign up for text offers and promotions, you acknowledge that CMG Strategy Co., LLC or its designated agent may send you commercial text messages using an auto-dialer or other technology. You consent to that type of contact. Standard message and data rates may apply. You can opt out at any time. You are not required to agree to this as a condition of purchasing any property, goods, or services. Text HELP for help. Text STOP to cancel.

Bogdanovich Decl., ¶ 14.

By joining Chipotle Rewards, you are confirming that you are 13 years of age or older, will receive email updates, promotions and offers from Chipotle, and agree to Chipotle's Privacy Policy and Terms & Conditions of the program.

Scoggins Decl., ¶ 6.

OPPOSITION TO MOTION TO COMPEL ARBITRATION                                     30
CASE NO. 8:24-CV-01672-FWS (JDEx)

1
2          Courts have refused to enforce significantly *more conspicuous blue*
3   hyperlinked terms located *above* the relevant button where such links also appeared
4   in large text blocks.
5
6
7   
8
9
10
11
12      *Morrison v. Yippee Ent., Inc.*, --- F. Supp. 3d ---, 2024 WL 4647296, at *2 and
13  *4 (S.D. Cal. Oct. 31, 2024) (holding notice was not reasonably conspicuous
14  because, even "though located near the 'Start Subscription' button, it is within an
15  eight-line paragraph, all in font smaller than that on the page generally.")
16
17
18
19
20
21
22      *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *9-*10 (N.D. Cal. July 31,
23  2023) (holding notice was not reasonably conspicuous because "hyperlink to the
24  'Subscriber Agreement' is buried in six lines of text and is located five lines away
25  from the 'Agree and Subscribe' button.")
26
27
28

*Maree v. Deutsche Lufthansa AG*, No. SACV20885MWFMRWX, 2021 WL 267853, at *3 (C.D. Cal. Jan. 26, 2021) ("There are seven lines blue and black text below the button, two lines of which are bolded, blue, and in a bigger font size than the Terms of Use, but smaller than the '**Complete Booking >**' button. These features do not render Expedia.com's Terms of Use sufficiently noticeable .") (internal citation omitted).

If blue hyperlinked terms *above* the buttons in *Morrison*, *Sadlock*, and *Maree* were all held insufficient, then surely Chipotle's plain-looking hyperlinked terms buried *below* "CREATE ACCOUNT" button are also insufficient.

## V.    CONCLUSION

For these reasons, Chipotle's motion to compel arbitration should be denied.


Dated:  January 2, 2025                    Respectfully submitted,

                                          **BURSOR & FISHER, P.A.**

                                          By:      */s/ Stefan Bogdanovich*
                                                        Stefan Bogdanovich

                                          L. Timothy Fisher (State Bar No. 191626)
                                          Stefan Bogdanovich (State Bar No. 324525)
                                          1990 North California Blvd., 9th Floor
                                          Walnut Creek, CA 94596

Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          sbogdanovich@bursor.com

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: pfraietta@bursor.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,972 words, which complies with the word limit of L.R. 11-6.1.

By:     */s/ Stefan Bogdanovich*
        Stefan Bogdanovich